**IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION**

| | |
|---|---|
| FRANCES I. SMITH, ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | Civil Action |
| ) | No. 09-4246-CV-C-JCE-SSA |
| MICHAEL J. ASTRUE, ) | |
| COMMISSIONER OF ) | |
| SOCIAL SECURITY, ) | |
| Defendant. ) | |

**ORDER**

Before the Court are Plaintiff's brief in support of her claim and Defendant's brief in support of the administrative decision. The case involves the appeal of the final decision of the Secretary denying plaintiff's application for disability benefits under Title II of the Act, 42 U.S.C. §401 et seq. Pursuant to 42 U.S.C.§ 405(g), this Court may review the final decision of the Secretary. For the reasons stated herein, the decision of the Secretary will be reversed.

Standard of Review

Judicial review of disability determination is limited to whether there is substantial evidence in the record as a whole to support the Secretary's decision. 42 U.S.C. § 405(g); e.g., Rappoport v. Sullivan, 942 F.2d 1320, 1322 (8th Cir. 1991). Substantial evidence is "'such evidence as a reasonable mind might accept as adequate to support a conclusion.'" Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. V. NLRB, 305 U.S. 197, 229 (1938)). Thus, if it is possible to draw two inconsistent positions from the evidence and one position represents the Agency's findings, the Court must affirm the decision. Robinson v. Sullivan, 956 F.2d 836, 838 (8th Cir. 1992).

In hearings arising out of an application for benefits, the claimant has the initial burden of establishing the existence of a disability as defined by 42 U.S.C. §§ 423(d)(1). Wiseman v. Sullivan, 905 F.2d 1153, 1156 (8th Cir. 1990). In order to meet this burden, the claimant must show a medically determinable physical or mental impairment that will last for at least twelve months, an inability to engage in substantial gainful activity, and that this inability results from the impairment. Id. A disabling impairment is one which precludes engaging "in any substantial gainful activity [for at least twelve months] by reason of any medically determinable physical or mental impairment." 42 U.S.C. § 423(d)(1)(A). A finding of "not disabled" will be made if a claimant does not "have any impairment or combination of impairments which significantly limit [the claimant's] physical or mental ability to do basic work activities. . . ." 20 C.F.R. § 404.1520©.

The standard by which the ALJ must examine the plaintiff's subjective complaints of pain is well settled. The ALJ must give full consideration to all of the evidence presented relating to subjective complaints, including the claimant's prior work record, and observations by third parties and treating and examining physicians relating to such matters as the claimant's daily activities, the duration and frequency of pain, precipitating and aggravating factors, dosage and effects of medication, and functional restrictions. Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984).

When rejecting a claimant's subjective complaints, the ALJ must give full consideration to all of the relevant evidence on the Polaski factors and may not discredit subjective complaints unless they are inconsistent with the evidence in the record as a whole. Haynes v. Shalala, 26 F.3d 812, 814 (8th Cir. 1994).

Discussion

Plaintiff was 50 years old at the time of the first hearing before an ALJ.[1] She alleged in her disability report that she was disabled due to torn cartilage in her low back, and arthritis. She had completed the tenth grade. Her past relevant work includes that of housekeeper, cook, and caterer.

The ALJ found that plaintiff had not engaged in substantial gainful activity since December, 2004, the alleged onset date. He concluded that plaintiff was not fully credible. It was his finding that plaintiff "has the residuals of a thoracic fracture and dislocation at T-11 and lumbar strain," [Tr. 20], but that she did not have an impairment or combination of impairments that met or equaled a listed impairment. It was his finding, that plaintiff could not perform her past relevant work, but that she had the Residual Functional Capacity ["RFC"] to perform a wide range of light work. Therefore, the ALJ found that plaintiff was not under a disability as defined by the Act.

Plaintiff contends that the ALJ erred in failing to afford appropriate and controlling weight to the opinion of the treating physicians, Drs. McElroy and Gaines; and erred in failing to properly consider the opinions from examining physician, Dr. Russell.

A full review of the record indicates that plaintiff sustained a severe back injury due to a car accident in 1987. She was in the hospital for two weeks, and underwent surgery where a rod was implanted in her spine. The recovery of partial return of motor and sensory nerves to the lower extremities took about 18 months. She continued to work at different intervals until 2004. She injured her back again in December of 2004 when she was moving beds at work.

---

[1]After the first hearing, conducted October 18, 2006, the Appeals Council, pursuant to a request for review by plaintiff, issued an Order of Remand. A supplemental hearing was held on March 26, 2007, before a different ALJ, who found again that plaintiff was not disabled as defined by law. That opinion was rendered in July of 2007.

Plaintiff saw Dr. McElroy, her family physician in May of 2004, where she complained of long-standing leg pain. Dr. McElroy eventually referred her to Dr. Gaines at the Columbia Orthopaedic Group in December of 2004. Her medical records indicate that she had difficulty walking around, had ankle problems, decreased muscle strength, and decreased range of motion, and was diagnosed with spastic hemiplegia or hemiplegic spastic dystonia. She was prescribed a drug for the management of spasticity and treated with orthrosic devices. She also sought medical attention and received a pain injection and Percocet.

Upon examination by Dr. Gaines in December of 2004, and his review of x-rays, he felt she had an annular tear of the lumbar spine. She had extremely limited range of motion in her lumbar spine, plus a awkward walk due to neurological deficits in her feet. Her back condition improved, but plaintiff still limped and could only be up for about two hours at a time. Dr. Gaines kept her off work for several more months, found that she had low back pain and limped after a spinal cord injury, and that her condition might be permanent. Dr. Gaines determined that further surgery was not an option because of her previous surgery.

Plaintiff's condition continued to deteriorate, according to the medical records. She had painful toe curling by July of 2005, used an orthosis, and took Zanaflex at bedtime. She did not like to take pain pills because of the side effects. She had multiple trigger points, and received trigger point injections for the myofascial pain and right sacroilitis. Although her pain had improved, plaintiff went back to the pain clinic for additional injections because she still had pain during the spring of 2006. She also was prescribed prescription drugs.

Dr. McElroy saw her in the pain clinic four times in late 2005 and 2006. The doctor submitted a letter regarding her condition in June of 2006. She noted worsening symptoms over time with her back, and a significantly altered gait because of the spinal cord injury and

degenerative disc disease that had developed. Dr. McElroy noted that plaintiff had tried physical therapy, steroid injections, and pain medication, with no significant relief. She noted plaintiff's hesitancy to use much pain medication. The doctor opined that plaintiff could not maintain any position for an extended period of time or walk any distance because of pain.

Plaintiff was also evaluated by Dr. Russell, a board certified physician in orthopedic surgery and disability evaluations, who examined plaintiff at her attorney's request. He noted her surgery and history of back pain, weakness, numbness, and spasms. Upon examination, the doctor found weakness in both legs, with more weakness on the right. He observed that she used Lidoderm patches at night because the pain was worse then. He noted that she was very unsteady as she rose from her chair, using the chair arms for support, and hesitated for three or four seconds before walking. The doctor also observed that she locked her right knee and foot when she walked in order to stabilize her foot, and had a crutch-like gait. He found that she was weak in her left leg, and was unsteady, unable to walk in a straight line. He also found tenderness, essentially no range of motion in her lumbar and thoracic area down to the sacrum; spasticity in the right leg and marked spasticity in the right foot; loss of approximately 80% strength of the right foot; loss of 20% dorsiflexion in the left leg; and degenerative changes. He concluded that she had a fracture and dislocation of the thoracic spine with partial paraplegia. It was his opinion that plaintiff could not work; that she was markedly limited in her ability to stand and walk; that she developed severe spasticity and pain after walking 200-300 feet; that she was limited in her ability to sit; and that she had constant pain if she stayed in one position more than three or four minutes. Dr. Russell found that plaintiff had severe damage to her spinal cord, and that she had been able to work in the past because she was in a supervised situation for some years, and was highly motivated. He concluded that "she has reached the point that she

can no longer function in a capacity enough to pursue any employment. This is because of the severe neurological deficit and spasticity in her lower extremities and back." [Tr. 276]. Dr. Russell provided sworn testimony in September of 2007, after the July hearing, in which he restated his opinion that plaintiff was unable to work. He indicated that he completely agreed with the opinion of Dr. Gaines that plaintiff could not perform even sedentary work. It was his opinion that most people could not have continued to work after the kind of accident plaintiff had suffered, but that she did continue to be employed as a housekeeper. He opined that this work took its toll on her, and that she eventually injured her back on the job, tearing the annulus and vertebra in her lower back, which was enough to prevent her from working.

While a treating physician's opinions are ordinarily to be given substantial weight, they must be supported by medically acceptable clinical or diagnostic data, and must be consistent with substantial evidence in the record. Haggard v. Apfel, 175 F.3d 591, 595 (8th Cir. 1999); Strongson v. Barnhart, 361 F.3d 1066, 1070 (8th Cir. 2004). The ALJ may reject the opinion of any medical expert if it is inconsistent with the medical record as a whole. See Bentley v. Shalala, 52 F.3d 784, 787 (8th Cir. 1995). In Prosch v. Apfel, 201 F.3d 1010 (8th Cir. 2000), the Eighth Circuit Court of Appeals discussed the weight to be given to the opinions of treating physicians, holding that the opinion of a treating physician is accorded special deference under the Social Security regulations.

After a full review of the record and the ALJ's decision, the Court finds that is was error to not have given controlling weight to the treating physicians, which was supported by the examining physician in this case, and that there is not substantial evidence in the record as a whole to support the ALJ's decision that plaintiff's impairments were not disabling. While the ALJ stated that there were inconsistencies and unsupported opinions, the Court finds that the

medical records, as a whole, support a finding that plaintiff's physical impairments constitute a disability. There is nothing in the record to suggest that the opinions of Drs. McElroy, Gaines and Russell are not consistent with each and with other substantial evidence in the record. To the contrary, there is ample evidence in the record as a whole to support a finding of disability in this case.

      The Court finds that the ALJ erred in the lack of weight afforded to these medical opinions. It is apparent that the record supports a finding that plaintiff has marked restrictions, which would impede her ability to maintain gainful employment. The Court finds that the ALJ did not give legally adequate reasons for the decision not to rely on the medically supported assessment of the degree of plaintiff's limitations by her treating physicians. Under the Social Security regulations, the opinion of a treating physician is accorded special deference, and the ALJ may only discount or disregard that opinion where there is better or more thorough medical evidence, or where a treating physician's opinion is so inconsistent that it undermines the credibility of such opinions. After reviewing the record as a whole, the Court finds that there was not substantial evidence to conclude that the opinions of Drs. Gaines or McElroy were inconsistent with plaintiff's treatment records, otherwise inconsistent with other medical evidence of record, or inconsistent with the testimony adduced at the hearing. Additionally, although Dr. Russell was not a treating source, it is obvious that he had fully reviewed plaintiff's medical records, and that his opinion was consistent with that of the treating physicians.

      It is worth noting that, in rendering his decision, the ALJ found plaintiff's daily activities to be inconsistent with a disabling condition. He found there were inconsistencies between her daily activities and her alleged levels of pain and functional limitation. The ALJ found that the fact that plaintiff helped take care of her granddaughter, could drive with her left foot, visit with

her father, and garden without bending and kneeling, among other things, discredited her testimony regarding her pain and disability. The law is clear, however, that " a claimant need not prove that he or she is bedridden or completely helpless to be found disabled." Payton v. Shalala, 25 F.3d 684, 687 n. 6 (8th Cir.1994) (citation omitted). That a claimant can accomplish basic daily activities does not necessarily preclude a finding of disability. Harris v. Secretary of Dep't of Health and Human Servs., 959 F.2d 723, 726 (8th Cir.1992). It does not appear to the Court that the ALJ adequately took into account plaintiff's testimony regarding the difficulty with which she conducts some activities, nor did he consider that Dr. Russell specifically found that she worked beyond the period that most individuals would have been able to, given the degree of her limitations.

Based on the record before it, the Court finds that the ALJ's decision is not supported by substantial evidence in the record. Accordingly, the decision of the Secretary should be reversed.

It is hereby

ORDERED that plaintiff's motion for judgment on the pleadings be, and it is hereby, granted. It is further

ORDERED that, pursuant to 42 U.S.C. Section 405(g), this matter be remanded to the Commissioner for the calculation and award of benefits.

/s/ James C. England  
JAMES C. ENGLAND  
United States Magistrate Judge

Date: 3/9/11